# CASES

# SUPREME JUDICIAL COURT,

# STATE OF MAINE.

---

INHABITANTS OF CARIBOU *vs.* CARIBOU WATER COMPANY.

Aroostook. Opinion December, 1901.

*Water Company. Contract. Power. Sale. Electricity.*

On June 28th, 1888, the Caribou Water Company, chartered in 1887 with the usual powers of such corporations, entered into a written contract with the town of Caribou, in which the company agreed to furnish, set and maintain twenty-five hydrants at points on its pipe line, to be designated by the town, and to furnish at all times a constant and sufficient supply of water for protection against fire, unavoidable accident excepted, and to furnish and set additional hydrants at a fixed price. For this service the town agreed to pay the company the sum of two thousand dollars per annum and to pay for the additional hydrants at the price named.

The contract also contained provisions in regard to the capacity of the company's reservoir or standpipe, the character of the dam across the river and the head of water to be maintained, the size and character of the water mains and the streets in which they were to be located, and a provision that the company should supply water for town buildings, school houses and for other public purposes in full payment of all local taxes assessed upon its property.

The contract also contained this clause:

"Fifteenth. The said company agrees to pay to the said town each year one-half of the net income derived from the sale or lease of power on said dam."

By an additional act of the legislature, approved February 9, 1893, the company was authorized "to carry on the business of furnishing lights, heat and power by electricity in the towns of Caribou and Fort Fairfield."

The water is pumped from the river by the power developed on the company's dam through a main leading to Caribou village, about a mile distant, where it is distributed through a pipe system to the inhabitants, and water is furnished to various parties and used by them in water-motors for the purpose of driving coffee-mills, a printing-press and other small machinery. Electricity is developed by the power at the dam and transmitted from the generator at the station through a system of wires to the village, where it is used in the usual way for heating and lighting purposes, and also for propelling electric-motors. No electricity is so used within three-fourths of a mile of the dam.

Upon a bill in equity praying for discovery and general relief, heard by the court on a report of the pleadings and agreed statement of facts, *held;* that under the fifteenth clause of the contract of June 28th, 1888, it is not necessary that the power leased or sold by the water company should be used upon its dam, in order that the company should be liable to the town for one-half of the net proceeds derived therefrom.

The contract had reference to the sale of any and all power that might be developed upon this dam, except that used by the company in carrying out its original corporate purpose of supplying the town with water for domestic, sanitary and municipal purposes.

The electricity generated by means of the power on the dam and transmitted through wires to the village of Caribou, where it is sold, is a sale of power on the dam. The power is developed at the dam and by means of it. It is directly transmitted from the dam to the village where it is used as power in propelling electric-motors, and, in another and converted form of power, for the purpose of heating and lighting.

And so as to power sold to individuals and used by them through the intervention of water-motors, as power. This is simply the power of the dam transmitted in the form of water and pressure through the company's pipe-line, and a sale of power within the meaning of the contract. And it is equally a sale of such power, whether the water is used for the production of power by reason of the direct pressure from the pump at the dam, or by the force of gravity after it has first been forced by means of the power developed at the dam to a reservoir, standpipe, or to the private tank of an individual taker.

In either case it is the power of the dam, there developed, that gives it its entire value for use in the production of power.

On report. Bill sustained.

Bill in equity asking for a discovery and accounting, and heard on bill, answer which included a demurrer, and an agreed statement of facts, which are as follows:—

The defendant's dam is across the Aroostook river about one mile from the village of Caribou,

At the west end of the dam the defendant has two water wheels connected by shafting with an electric generator and power pump located in its pumping station, which is also on or near the west end of said dam. Water drawn from the west end of said dam is pumped by the power so developed through a main leading to said Caribou village about a mile distant, where it is distributed through a pipe system to the inhabitants, and from such pipes water is furnished through service pipes to various parties for use in water motors by them used in driving coffee-mills, a printing-press, an ice cream freezer.

The electricity so developed by said wheels at said dam is transmitted from the generator at said station through a system of wires to the village of Caribou, where it is used in the usual way for heating and lighting purposes, public and private, and also for the propelling of electric-motors. No electricity is so used within three-fourths of a mile of said dam.

No power has ever been generated, or used at said dam, except as above stated and as admitted by the answer.

Defendant admitted that plaintiff has demanded an accounting under their contract set forth in the bill.

*E. Foster, O. H. Hersey; B. L. Fletcher*, for plaintiff.

*H. M. Heath, C. L. Andrews*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, POWERS, JJ.

WISWELL, C. J. The Caribou Water Company is a corporation organized under a special act of the legislature, approved March 11, 1887, for the purpose of supplying the inhabitants of the town of Caribou with water for all domestic, sanitary and municipal purposes, including the extinguishment of fires. It was given by its charter the usual rights and privileges of similar corporations, and was authorized for its corporate purposes to erect and maintain a dam on the Aroostook River, to make contracts with other corporations and with individuals for a sale of water, and with the town of Caribou for a supply of water for the extinguishment of fire and for other municipal

purposes. The company was also authorized to sell or lease any power not used by it on its dam.

On June 28, 1888, the Water Company entered into a written contract with the town of Caribou, in which the company agreed to furnish, set and maintain twenty-five, hydrants at points on its pipe line, to be designated by the town, and to furnish at all times a constant and sufficient supply of water for protection against fire, unavoidable accident excepted, and to furnish and set additional hydrants at a fixed price. For this service the town agreed to pay the Water Company the sum of two thousand dollars per annum and to pay for the additional hydrants at the price named. The contract also contained provisions in regard to the capacity of the company's reservoir or standpipe, the character of the dam across the river and the head of water to be maintained, the size and character of the water mains and the streets in which they were to be located, and a provision that the company should supply water for town buildings, school houses and for other public purposes in full payment of all local taxes assessed upon its property.

The contract also contained this clause :

"Fifteenth. The said company agrees to pay to the said town each year one-half of the net income derived from the sale or lease of power on said dam." By an additional act of the legislature, approved Feb. 9, 1893, the company was authorized "to carry on the business of furnishing lights, heat and power by electricity in the towns of Caribou and Fort Fairfield."

In this bill in equity the plaintiffs, after fully setting out the facts above briefly referred to, further allege that since the execution of the contract between the town and the Water Company, the latter had sold or leased "power on said dam," for lighting purposes, and had furnished "power on said dam, to run water motors, grist-mills and other machinery, and had received a large net income from such sale or lease of power, but that the amount of such net income was unknown to the complainants, and that they had been unable to ascertain the amount thereof from the Water Company, although they had made diligent inquiry and frequent demand upon the company therefor; that the company had refused to pay to the town one

half of the net income derived from the sale or lease of power on the dam, and had neglected and refused to account to the complainant for one-half thereof; that the information in regard to the amount thus received was wholly within the possession of the company, and that the accounts of the net income derived from these sources were of such an intricate and complex nature that the complainants were without adequate remedy at law. They therefore in this bill pray for discovery, that the Water Company may be compelled to account and for other relief.

The case comes to the law court upon a report of the pleadings and upon an agreed statement of facts, from which it appears that water is pumped by the power developed on this dam through a main, leading to Caribou village, about a mile distant, where it is distributed through a pipe system to the inhabitants, and that water is furnished to various parties and used by them in water-motors for the purpose of driving coffee-mills, a printing-press and other small machinery; that the electricity developed by the power at the dam is transmitted from the generator at the station through a system of wires to the village, where it is used in the usual way for heating and lighting purposes and also for propelling of electric-motors. It is admitted that some income has been derived by the company from these sources. No electricity is so used within three-fourths of a mile of the dam.

The only question raised by the report is as to the construction of the clause above quoted in the contract, in which the company agrees to pay the town each year one-half of the net income "derived from the sale or lease of power on said dam." As we construe this clause, it is not necessary that the power leased or sold by the defendant should be used upon its dam, in order that the company should be liable to the town for one-half of the net proceeds derived therefrom. The subject matter of the provision was the power on the dam, exclusive, of course, of that used in pumping water for domestic, sanitary and municipal purposes, and it is immaterial where that power is used or how it may be transmitted, so long as it is the power on the dam, that is, power developed by means of the dam and the head of water thereby accumulated, which is by some means transmitted to the place where it is used for the production of power.

It would not be questioned, we take it, if this power developed at the dam should be transmitted a short distance by the means of shafting or belts and there used in a manfacturing establishment, that the sale of power in this manner would come within the meaning of the contract. We think that it is equally within that meaning if the power is conveyed a greater distance by some other means and there used as power.

It made no difference to the contracting parties where the power might be used. They were providing for the contingency that this dam might be capable of producing more power than would be required by the company in carrying out its corporate purposes, which power might be sold, and in view of the pretty liberal stipulations of the town as to the payment for the hydrant service, and in regard to the payment of all municipal taxes by the company by supplying water for the public purposes named, the company seems to have been willing to agree to divide with the town any net income that might be received from this source. In fact, we think that the contract had reference to the sale of any and all power that might be developed upon this dam, except that used by the company in carrying out its original corporate purpose of supplying the town of Caribou with water for domestic, sanitary and municipal purposes.

The electricity generated by means of the power on the dam and transmitted through wires to the village of Caribou, where it is sold, is a sale of power on the dam. The power is developed at the dam and by means of it. It is directly transmitted from the dam to the village where it is used as power in propelling electric-motors, and, in another and converted form of power, for the purpose of heating and lighting.

And so as to the power sold to individuals and used by them through the intervention of water-motors, as power, this is simply the power of the dam transmitted in the form of water and pressure through the company's pipe-line, and is, we think, a sale of power within the meaning of the contract. And it is equally a sale of such power, whether the water is used for the production of power by reason of the direct pressure from the pump at the dam, or by the force of gravity after it has first been forced, by means of the power

developed at the dam, to a reservoir, standpipe or to the private tank
of the individual taker. In either case it is the power of the dam,
there developed, that gives it its entire value for use in the production
of power; in the first case, by reason of the direct pressure; in the
latter case, because by reason of the power at the dam, the water has
been pumped and forced to an elevation, from which it may be taken
by the force of gravity and used in the production of power.

In our view, then, of the meaning of the contract in this respect,
the Water Company is liable to the town for one-half of the net
income from the sale, by any of these methods, of the power developed
at the dam.

The bill will therefore be retained and remanded for further pro-
ceedings.

*So Ordered.*